[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This decision dissolves the twenty-one-year marriage of Carolyn and Thomas Mascola. On June 10, 1999, the plaintiff filed this action alleging that her marriage to the defendant had broken down irretrievably. She sought joint custody of their two minor children, child support, alimony, and an equitable division of marital assets. With the parties disputing custody, visitation, and financial orders, the Judicial District of Danbury referred this case to the regional family trial docket for trial. Prior to trial, the parties agreed to joint legal custody of their children, one child to reside with each parent. The parties appeared for two days of trial on the financial issues in November and December of 2001. Each party testified and offered documentary evidence. In addition, the court heard testimony from a friend of the plaintiff's father. The parties made their closing arguments on December 17, 2001. The transcript ordered by the court was ready on February 7, 2002, and the case was thereupon submitted to the court for decision.
 I — FINDINGS OF FACT
The court has observed the demeanor of the pates and evaluated their credibility. The court has carefully considered all of the evidence, including the exhibits and the testimony presented, according to the standards required by law. The court has carefully considered the statutory criteria for dissolving a marriage and entering orders regarding child support, alimony, and equitable distribution of property. Upon such consideration, the court finds the following facts to have been proven, as well as additional facts included in later sections of this decision.
The court finds that it has jurisdiction over the marriage. One party has resided in Connecticut continually for more than one year prior to the bringing of this action. The parties were married in Alexandria, Virginia, on May 2, 1981. The parties have two minor children who are legal issue of the marriage: Christina D. Mascola, born on May 3, 1989, and Michael M. Mascola, born on January 24, 1993. No other minor children have been born to the wife since the date of the marriage. The parties have not been recipients of state assistance. The marriage between the pates has broken down irretrievably with no reasonable hope of reconciliation.
The court finds no fault in the breakdown of this marriage. The two pates have simply grown apart. in the early 1990s they tried marriage CT Page 4285 counseling for several years, but the plaintiff grew steadily unhappier in the marriage. She perceived the defendant as unsociable, depressed, controlling, and preferring to stay at home, whereas she is much more socially minded and likes to spend time with friends. By 1995, she decided to file for divorce. In therapy and on antidepressant medication, however, she waited four years to do so. The defendant realized that his wife had been unhappy in the marriage, but thought that their relationship improved in the late 1990s. When she told him in 1999 that she was filing for divorce, both agree that he was shocked.
The plaintiff is forty-three years old and a high school graduate. Before birth of her first child, she worked for ten years as an office manager. She has also held jobs teaching calligraphy, baking, and in retail sales. After Christina was born in 1989, the plaintiff, by agreement of the parties, primarily stayed at home to care for the children. During the dissolution proceedings, she worked 34 hours a week as a receptionist in a medical office, where she earned $13 per hour until quitting because her employer would not provide benefits or full-time employment. She recently started a new business doing home maintenance and repair, from which she testified that she believed she could earn as much as she had been receiving as the medical office receptionist. She testified that a doctor told her six years ago that she might have multiple sclerosis, but did not offer any evidence to confirm such a diagnosis. She also testified that she had no other physical health problems that would impair her ability to support herself and any children in her care.
The defendant is approximately fifty years old. After graduating from high school, he received an associate's degree from the State University of New York, and completed one additional year of undergraduate education in mechanical engineering at Northeastern University but did not receive a bachelor's degree. In 1979 he went to work as an engineer at Nash Engineering, where he was employed for 21 years until being laid off because of corporate downsizing in 2000. He then worked part-time as a design engineer at a small start-up company, ErgoTech, for six months, beginning in December 2000. As of the end of trial, he had regained full-time employment, at Ambel Precision. He has also run his own home repair business. He disclosed no health problems in his testimony at trial.
At age 43, the plaintiff is six years younger than the defendant. Although her income potential is presently less than that of the defendant, she has the ability to acquire new vocational skills and increase her employability beyond her present earning capacity. The defendant faces an unknown job future. He is 50 years old. His first job foray after 21 years at Nash only lasted six months. Despite his CT Page 4286 vocational skills and history as an engineer, his lack of a college diploma may hinder his employability or capacity to earn income comparable to his past wages, as may his age. Both pates have the occupational ability to undertake home repair or "handyman" type employment. The court thus does not find either party to have a significant advantage in terms of vocational skills, future employability, or future capacity and opportunity to acquire income and assets. Both pates are in relatively good health. After a 21-year marriage, both pates have primary residence of one of their children and thus similar needs for safe and decent housing, access to good schools, and sufficient resources to care for a child. The lack of financial security on both pates' part suggests a need to craft financial orders that will take future uncertainty into account by ordering each to pay the other a minimum of a dollar per year in alimony.
 II — DISCUSSION OF FINANCIAL ISSUES
Since the parties have agreed on custody and visitation matters, the issues facing this court concern the relevant financial orders: child support, alimony, classification and distribution of marital property, and allocation of debt. With regard to child support, the principal issue is the plaintiff's earning capacity to use for purposes of calculating an award. The court finds that although she had no present earned income, since she quit her employment, she has an earning capacity that equals or exceeds her income from her last employment as a medical office receptionist, in the amount of $442 per week; see footnote one. The court finds that Mr. Mascola has income of $50,000 per year in his new employment.
The major assets resulting from this marriage are deferred compensation that the pates have agreed to split equally; remaining proceeds from sale of New York property that the defendant received from his parents; limited assets each otherwise has remaining; and the marital home, which the pates have stipulated to have a fair market value of $230,000, unencumbered by mortgage. The parties dispute three aspects of equitable distribution of marital property: (1) Whether to award the plaintiff any portion of the sales proceeds from New York property that the defendant inherited from his parents, (2) whether the defendant's expenditure of funds from assets under his control during the dissolution proceedings violated the automatic orders of Practice Book § 25-5 and, as such, should affect the court's distribution of marital assets, and (3) disposition of the marital home. The court's resolution of these questions will affect how it allocates remaining marital assets.
"There are three stages of analysis regarding the equitable distribution of each resource; first, whether the resource is property CT Page 4287 within Section 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the pates." Krafick v. Kraflck, 234 Conn. 783,792-93 (1995). The court finds that all items listed on each party's financial affidavit as assets, plus the $6,000 that the plaintiff received in settlement of a claim arising from an automobile accident during these proceedings, are property within the meaning of § 46b-81
and hence subject to equitable distribution by the court.
 A. The New York Property
The defendant's parents purchased a ten-acre parcel of wooded land in New York State in 1960. Over the years, they spent weekends there, built a cabin, then a pavilion, and finally a retirement home with stable and horses. In 1976, they added the defendant as a co-owner. In 1989, his mother transferred the property to him alone but it remained, in fact if not in title, under his mother's control until she entered a nursing home and later, in 1995, died.
After the pates married in 1981, they did not initially have their own residence but house sat for a few months at a Stamford residence which they had to vacate on weekends, most of which they traveled to the New York farm to visit his parents. After the pates rented their first apartment a few months later, they continued to visit the New York property on weekends, but the frequency of visits decreased over the years. When there they would enjoy recreational activities, but also helped out the defendant's parents, sometimes cleaning or clearing and one time helping them build a deck. The defendant enjoyed visiting the farm on weekends enormously, as he had fond memories of his years there as a young boy and adolescent, and enjoyed the farm animals and outdoor life. When he began to sense, in the late 1990s, that financial reverses at Nash Engineering threatened his employment there, he proposed to the plaintiff that they move to the New York property. The plaintiff, on the other hand, preferring the social opportunities afforded by urban or suburban living, found the New York house too isolated and rejected any suggestion that they relocate there.
After the defendant's mother died in 1995, the pates began renting the New York property to tenants. It was obvious from the testimony at trial that both pates found the experience of being long-distance landlords very unpleasant. Mrs. Mascola described it as a "nightmare" because of tenant threats to sue the pates over tainted water. She described the defendant as constantly depressed, worried, and concerned about the property. He agreed at trial that he was, in his own words, "practically a basket case" from worrying about the property. The plaintiff repeatedly CT Page 4288 encouraged the defendant to sell the property. The defendant was very reluctant to sell the property and wanted the family instead to move there, but the plaintiff told him she would leave him rather than do so. Believing that continuing to rent the property was jeopardizing his family, the defendant eventually agreed to sell it. On March 29, 1999, he sold the property for $123,600. Immediately after the sale, however, the defendant regretted doing so and unsuccessfully tried to buy the property back. The net proceeds from the sale were $116,000, of which the defendant put $100,000 into a joint certificate of deposit and the balance in other savings accounts. The plaintiff immediately used $23,000 of the joint assets to pay off the balance of the mortgage on the pates' marital property, and she then filed for divorce.
The court finds that the proceeds from the New York property are properly considered marital property for purposes of equitable distribution. Although the plaintiff acquired his initial ownership interest in the property prior to the marriage, the pates used the property together for many years, jointly contributed to its improvement, and mutually shared in the profitability and unhappiness of being absentee landlords.
 B. The defendant's expenditures during the dissolution proceedings
During the pendency of these proceedings the defendant has paid alimony and child support regularly to the plaintiff. He also rented and furnished his own apartment. Upon being served with divorce papers, the defendant placed $127,715 of joint assets, which included the balance of proceeds from sale of the New York property, into individual accounts that he controlled exclusively. By the time of trial, he had $41,500 remaining as assets. The plaintiff claims that the defendant's use of the marital assets during the divorce violates the automatic orders of Practice Book § 25-5(1) that are applicable after the filing of any dissolution action. That subsection provides as follows:
 Neither party shall sell, transfer, encumber (except for the filing of a lis pendens), conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the pates, except in the usual course of business or for customary and usual household expenses or for reasonable attorneys' fees in connection with this action.
The court has carefully reviewed the expenditures made by the defendant CT Page 4289 during this period. The court finds that the defendant's expenditures complied with the mandate of the automatic orders that marital assets may be used "for customary and usual household expenses or for reasonable attorneys' fees in connection with this action." As sufficient assets remain, moreover, to award the plaintiff her reasonable and equitable share of the proceeds from the sale of the New York property and other assets in existence at the commencement of this proceeding, the defendant was, in effect, during the pendency of this action, spending his own money.
 C. The Marital home
After the plaintiff instituted these proceedings, the defendant continued to live in the marital residence. She asked him to leave and he refused, and she then made several complaints to the police. None of her complaint resulted in an arrest until an incident in which both pates were arrested, and ensuing mutual protective orders required the defendant to vacate the premises. He spent the next few nights sleeping on the floor at his office until he found an apartment rental. After the protective orders ended, he did not return to the marital home.
The plaintiff has requested an order allowing her to remain in the marital home or to buy out any interest the court may award therein to the defendant. The defendant also wants possession of the marital estate, but has urged the court to order the property to be sold because he believes that allowing one of the parent to live in the marital home will cause the child living with the other parent to feel deprived and left out. The marital home is the largest immediately available asset to the parties. Proceeds from the sale would enable each party to acquire satisfactory housing for themselves and the child each cares for. Each party and child has an equally valid claim to occupancy of the premises. After considering both arguments; all the statutory factors; the financial needs of the pates; the income, assets, and resources available to both households; the role of each parent as a custodial parent and the needs and best interests of the two children, the court concurs with the defendant that the parties should sell the property and divide the proceeds in accordance with the orders below.
 III — ORDERS
After considering all the statutory factors set forth in General Statutes § 46b-81 (c) as to equitable distribution of property, § 46b-82 as to alimony, § 46b-84 as to support of a minor child, § 46b-215a-1 et seq., Regs. Conn. State Agencies, as to child support, and § 46b-62 as to counsel fees, together with applicable case law and the evidence presented here, the court hereby enters the CT Page 4290 following orders:
1. Dissolution of Marriage: The marriage of the pates, having broken down irretrievably, is hereby dissolved.
2. Parenting Orders: The court incorporates by reference into its judgment here the parties stipulation of September 13, 2001, as to custody and visitation of the children, which this court that date adopted and entered as an order of the Superior Court.
3. Equitable distribution of property: Each party may retain, free and dear of the other, all assets listed on their respective affidavits, except as set forth below. These orders take into consideration the court's finding that the plaintiff should receive a portion of the net proceeds from the sale of the New York property, the plaintiff's exclusive use of proceeds she received during this proceeding from the motor vehicle accident, the equal division of pates' retirement funds, and the distribution of other property of value, including the marital home, listed on their respective affidavits.
a. The court awards the plaintiff title to and possession of the jewelry listed on her financial affidavit, except for the obsidian head; the Keyspan account purchased by her father; the engagement ring and Sony Camcorder listed on the financial affidavit; the 1984 Camry and 1991 Dodge Van listed on her financial affidavits; and her Union Savings accounts.
b. The court awards the defendant title to and possession of the Wahoo motor boat and accompanying trailer; the 1990 Honda Civic wagon on both parties' affidavits; the 2000 Ford Econoline van; the computer he purchased with his mother's funds, the obsidian head; and all furnishings and personalty he has acquired since leaving the marital premises.
c. The defendant shall transfer the plaintiff the sum of $14,860 within thirty days of the effective date of this decision.
d. The parties shall transfer to each other all property awarded to either party in the above two paragraphs within thirty days of the date of this decision, and shall sign any legal documents necessary to effectuate such transfers.
e. The court orders the pates to sell the marital home. The parties are to cooperate in the listing, showing, and closing of the property. The parties shall immediately list the property for sale at its fair market value with a real estate agent familiar with real property values in the Brookfield area. If the parties cannot agree on a listing broker, price, CT Page 4291 terms of the listing or like details, either party may move this court for further orders. The pates shall accept the first bona bide offer within 7% of the asking price. The wife shall have sole and exclusive use of the premises until the sale of the property, and she shall be solely responsible for routine maintenance costs, taxes, insurance, and utilities incurred during the period of exclusive use and shall not permit waste or damage to the property. The plaintiff shall leave the premises in broom-clean condition. While occupying the house, she shall also be responsible to pay for all minor repairs that cost less than $500 in payments to a third party; the parties shall split equally the cost of paying third persons to perform major or structural repairs costing more than $500. If the plaintiff vacates the property before its sale, both parties shall equally be responsible for all tax, insurance, maintenance and upkeep expenses of the house, and shall equally share in any rental income the house may produce. The parties shall equally split the net proceeds after all expenses from sale of the home (gross proceeds less realtor commissions, attorney fees for sale, conveyance taxes, and recording charges) have been paid, with the following exception: for each full month that the plaintiff occupies the house, between the first day of the month following issuance of this decision and transfer of the house by sale, her share of the net proceeds from the sale of the marital home shall be reduced by four hundred dollars, and the plaintiff's share of the net proceeds increased by four hundred dollars. The court retains jurisdiction over the issue of sale of the house.
f. The parties indicated at trial they had amicably resolved distribution of household furnishings in the marital home and jointly-acquired tools but the court will retain jurisdiction for purposes of resolving any dispute regarding these assets.
g. The court awards title to the plaintiff of the two CD accounts listed on her financial affidavit as held for the benefit of the children. The plaintiff shall within thirty days of the date of this decision place such funds into a Uniform Gifts to Minors Act account.
h. The plaintiff's SEP and the defendant's Nash Engineering Pension shall each be divided equally, based on their present values, by way of qualified domestic relations order. The parties shall share equally the cost of preparing the QDROs. The court will retain jurisdiction for purposes of approving the QDROs.
4. Life Insurance: The defendant shall maintain such life insurance as is available from his employer for the benefit of each minor child until the youngest child has reached the age of 18.
5. Financial responsibility for indebtedness: Each party shall be CT Page 4292 responsible for paying all debts and liabilities listed on their respective financial affidavits, and shall indemnify and hold the other harmless thereon. The plaintiff shall be responsible for paying past due real estate taxes, and interest due thereon, on the marital home, and shall hold the defendant harmless thereon.
6. Child Support[1]:
a. Basic Orders
 (1) The defendant shall pay the plaintiff child support in the amount of $15 per week until the older child has reached the age of eighteen or has graduated from high school, whichever is later, but in no event beyond Christina's nineteenth birthday.
 (2) After child support for Christina ends, the non-custodial parent shall pay the custodial parent of the younger child support in an amount determined at that time under then applicable child support guidelines until the younger child reaches the age of eighteen or has graduated from high school, whichever is later, but in no event beyond that child's nineteenth birthday.
b. Unreimbursed health-related[2] expenses for the minor children andchild care expenses.
(1) The defendant shall pay 54% and the plaintiff 45% of
 (a) Christina's unreimbursed medical expenses and health-related expenses, and
 (b) child expenses reasonable and necessary for the plaintiff to maintain employment.
(2) The defendant shall pay 70% and the plaintiff 30% of
 (a) Michael's unreimbursed medical expenses and health-related expenses, and
 (b) child care expenses reasonable and necessary for the defendant to maintain employment.
c. Health insurance for the minor children: Under General Statutes § 46b-84 (f), the court dissolving a marriage must include provisions CT Page 4293 in the support order for health insurance coverage for any minor children.[3] The evidence established that, as of the end of trial, the defendant had health insurance coverage for both minor children through his place of employment. The court orders the defendant to continue providing health insurance for the minor children that is comparable in scope or better than that offered under the HUSKY plan established in general statutes § 17b-289 et seq. so long as such insurance is available to the defendant through his employment at a cost less to him than HUSKY insurance. If such cost exceeds the cost of HUSKY insurance, or if the defendant loses the right to obtain health insurance for the minor children through his employment, then the primary custodial parent of each minor child shall maintain health insurance for that particular child.
d. Wage withholding order: Pursuant to General Statutes § 52-362 (b), the court enters an order for immediate wage withholding, subject to the rights of the parties after issuance of this decision to agree to an order of contingent withholding. The court finds that the defendant has previously been advised of the minimum amount of income which is exempt from withholding under state and federal law, his right to claim any applicable state or federal exemptions with respect thereto, and his right to offer any evidence as to why a withholding order effective immediately should not issue. The defendant may, upon motion to the court, offer any evidence as to why the withholding order effective immediately should not continue in effect.
7. Tax exemptions: The parties shall annually alternate the split child tax exemptions and child tax credits until no longer able to claim such for both children, after which they shall alternate claiming such credits and exemptions until no longer eligible to do so. In the first year of only one exemption, the party with whom the younger child resided for the greatest portion of that year may claim the exemption and credit.
8. Alimony[4]:
a. Alimony to the plaintiff: The court orders the defendant to pay the plaintiff alimony in the amount of $175 per week for ten years from the date of this decision, and in view of the plaintiff's uncertain income and health prospects in the amount of one dollar per year for five years thereafter. In addition to consideration of all the statutory factors, the court has set the amount of alimony for the first ten years after judgment in contemplation of obtaining parity in the amount of income that each party will have available (including income that the court deems available because of earning capacity) for its household consisting of itself and one of the parties' minor children. Alimony shall terminate upon death of either party, remarriage of the plaintiff, or her CT Page 4294 cohabitation with a male pursuant to General Statutes § 46b-86 (b).
b. Alimony to the defendant: In view of the uncertain job and income prospects of the defendant, the court orders the plaintiff to pay the defendant alimony in the amount of one dollar a year for fifteen years from the date of this decision, terminable upon death of either party, remarriage of the defendant, or his cohabitation with a female pursuant to General Statutes § 46b-86 (b).
9. Counsel fees: Each party shall be responsible for paying its own attorney's fees.
10. Judgment will enter accordingly.
BY THE COURT
STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT